# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KAWASAKI ROBOTICS (USA), INC.,

        Plaintiff,

v.

ISAFSERV, INC., d/b/a ISS,

        Defendant.

_____/

CASE NO. 06-14990

HON. MARIANNE O. BATTANI

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. #14). The Court has reviewed the motion and brief in support and finds oral argument would not aid in the resolution of this motion. See E. D. Mich. LR 7.1(e)(2). For the reasons that follow the Court **GRANTS** Plaintiff's motion.

## I. INTRODUCTION

Plaintiff Kawasaki Robotics (USA) Inc. (KRI) filed this action, alleging that Defendant IsafServ, Inc., (ISS) failed to pay for robots and controllers built and delivered under the parties' contract. KRI builds and supplies industrial robots and related accessories as well as automation system services, application engineering, feasibility studies, robot concept simulations, training, documentation, maintenance programs and spare parts. ISS is an integrator of robot systems and related accessories.

On August 25, 2005, ISS requested a quotation for six robots and related controllers. Pl.'s Ex. 1. The robots were standard KRI models, identified as: Kawasaki model ZZX165U

(6-Axis); Kawasaki model ZZD130 (4-Axis) robots; and Kawasaki model FS10L (6-Axis). The quote requested two robots of each model. Id.

On August 29, 2005, KRI submitted Quotation No. Q05292.000 to ISS. Pl.'s Ex. 2. The Quote included a cost breakdown and shipping information. The total price was $268,800.00. Id.

ISS accepted the Quote on September 2, 2005, and issued Purchase Order S0060 to KRI. Pl.'s Ex. 3. The Purchase Order included an addendum setting forth robot specifications, shipment dates, and payments terms. Id. The payment schedule specified a 20% down payment ($53,760.00) with the order; 30% payment ($80,640.00) due on November 14, 2005, 30% payment to be made January 6, 2006; and a 20% payment due February 3, 2006. Id.

ISS paid the first installment on the purchase price in the agreed-upon amount. Pl.'s Ex. 4. KRI produced the first robot. Prior to the shipping date, Vern Mangold, President of ISS visited KRI's offices to review and inspect the robot. Shipment occurred on October 16, 2005.

KRI continued production on the remaining robots. On November 10, 2005, ISS sent KRI a checklist of questions and testing requirement pertaining to those robots. Pl.'s Ex. 6. KRI addressed the issues, and on November 22, 2005, Mangold returned to KRI's offices to inspect the robots. ISS subsequently accepted shipment. Pl.'s Ex. 7. K R I invoiced ISS for the next installment payment, due January 15, 2006. Pl.'s Ex. 8. ISS did not remit payment. Instead, on February 8, 2006, ISS forwarded one-half of the amount due with a letter requesting a modified payment scheduled based on delays with its customer. Pl.'s Ex. 9. ISS proposed a new delivery and payment schedule because of

2

significant customer delays, specifically with sub-suppliers and hurricanes. ISS offered to pay 30% on May 15, 2006, 20% on July 30, 2006, and 20% on August 30, 2006. Id.

KRI sent invoices to ISS in July and August 2006, covering the remainder of the outstanding balance, or $174,720.00. ISS subsequently proposed another payment plan giving itself until November 1, 2006, to make a payment. Pl.'s Ex. 11. KRI agreed to the modification with minor variations, see Pl.'s Ex. 11; however, ISS did not make any further payments.

Consequently, KRI filed a complaint alleging breach of contract, unjust enrichment and account stated, and that damages, excluding interest and a service fee amounted to $174,720. ISS answered the Complaint and although it admitted the parties entered into an agreement, it denied owing $174,720. In its motion for summary judgment, KRI seeks $188,475.28 for the amounts due and owing under the parties' agreements and services fees.

On March 2, 2007, this Court granted counsel for ISS leave to withdraw and ordered ISS to retain counsel within 30 days. See March 2, 2007 Order. ISS has failed to do so and has not responded to Plaintiff's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the United States Supreme Court has ruled: In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

3

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant

must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In this case, Defendant has failed to respond to the motion. Under Guarino v. Brookfield Township Trs., 980 F.2d 399, 407 (6th Cir. 1992), the district court is not required to conduct its own probing investigation of the record to discover an issue of material fact when a summary judgment motion is unopposed. Nevertheless, the trial court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." Id. Therefore, summary judgment is proper if Plaintiff meets its burden in moving for summary judgment on the unopposed issues. Cacevic v. City of Hazel Park, 226 F.3d 483, 492 (6th Cir. 2000).

## IV. ANALYSIS

Plaintiff seeks summary judgment on two claims: breach of contract and account stated. Each basis is discussed below.

### A. Breach of Contract

To succeed on a breach of contract claim, the plaintiff must show a contract between the parties, the terms of the contract require performance of a certain action, a breach and

that the breach caused injury to the other party. See e.g. Synthes Spine Co. v. Calvert, 270 F. Supp.2d 939, 942 (E.D. Mich 2003) (articulating the elements for a breach of contract under Michigan law).

There is no dispute as to the first element. ISS admits in its Answer that it "agreed to purchase, certain robots and controllers for a total of $268,000.00" from KRI. Answer at ¶ 6. The terms of the contract as reflected by the Quotation No. Q05292 and the Purchase Order likewise are undisputed. Further, it is undisputed that ISS failed to pay the amount to which the parties agreed. KRI has received a partial payment; however $174,720.00 remains due and owing.

Mangold, as President of ISS, confirmed the amount on at least two occasions through his requests for modified payment schedules. See Pl.'s Exs. 9, 11. These exhibits support Plaintiff's claim. Although Defendant pleaded that Plaintiff failed to perform in its Answer, there is no evidence before the Court to support the existence of a dispute in that regard. To the contrary, Defendant's contemporaneous correspondence reveals no dispute as to the product and/or services provided. See February 8, 2006 letter, September 7, 2006 e-mail. Accordingly, the Court finds that KRI performed its obligations under the agreement when it shipped the final five robots to ISS on November 25, 2005, and is entitled to summary judgment on its breach of contract claim.

**B. Account Stated**

In the alternative, Plaintiff asks the Court to award it summary judgment on its account stated claim. The Court finds that the evidence likewise satisfies this alternative theory of recovery.

The conversion of an open account into an account stated occurs when the parties agree to a sum as the correct balance due from one to the other. Kaunitz v. Wheeler, 73 N.W.2d 263, 265 (Mich.1955) (internal citation omitted). In determining whether this has occurred, the Court reviews the facts, including "evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. Id. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account." Id.

This Court must determine whether the evidence submitted shows as a matter of law, that the parties agreed to a "balance" owed. In this case, the evidence is clear that they did, and the amount Defendant owed to Plaintiff was $174,720.00. Defendant never disputed that the invoice amount, when it sought an extension of time in which to pay. Accordingly, the Court finds that Plaintiff has met its burden to show that Defendant promised to pay Plaintiff $174,720.00, in any event, no later that November 2006.

Nevertheless, there is no basis in the pleadings and exhibits before the Court that the parties agreed to a service fee. Accordingly, Plaintiff's motion is **GRANTED**. It is entitled to judgment in the amount of $174,720.00.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: June 19, 2007

**CERTIFICATE OF SERVICE**

      A Copy of this Order was e-filed and/or mailed to counsel of record and Defendant on this date.

                                              <u>s/Bernadette M. Thebolt</u>
                                                   Deputy Clerk